Filed 6/28/19; pub. order 7/26/19 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| CHARLES HUCKEY, | |
| Plaintiff and Appellant, | E070213 |
| v. | (Super.Ct.No. MCC1600451) |
| CITY OF TEMECULA, | OPINION |
| Defendant and Respondent. | |


APPEAL from the Superior Court of Riverside County. Raquel A. Marquez, Judge. Affirmed.

Kubota & Craig and Yoshiaki C. Kubota for Plaintiff and Appellant.

Richards, Watson & Gershon, Robert C. Ceccon and Stephanie Cao for Defendant and Respondent.

## I. INTRODUCTION

Plaintiff and appellant, Charles Huckey, sued defendant and respondent, City of Temecula (the City), for injuries he sustained from tripping and falling on a defective city

1

sidewalk. He alleged the sidewalk defect was a dangerous condition of public property. (Gov. Code, §§ 830 et seq.)[1] The trial court granted the city's motion for summary judgment on the ground the sidewalk defect was trivial as a matter of law. The sidewalk was vertically uneven between two concrete panels, and the height differential was 9/16 of an inch, three feet and one foot from the sidewalk's right edge, and one and 7/32 inches (1.21875 inches), at the right edge, as plaintiff was walking when he fell.

In this appeal, plaintiff claims (1) the City did not meet its initial burden of making a prima facie evidentiary showing that he could not establish that the sidewalk defect was a dangerous condition, or presented a substantial risk of injury (§ 830), and (2) the court erroneously concluded that the sidewalk defect was trivial as a matter of law (§ 830.2).

In our de novo review, we conclude the City met its initial burden on its motion, and plaintiff did not present sufficient evidence to raise a triable issue of material fact. All of the papers adduced on the motion show that the sidewalk defect was trivial as a matter of law.

## II. FACTS AND PROCEDURE

A. *Plaintiff's Complaint*

Plaintiff alleges two causes of actions in his complaint against the City, captioned or styled as (1) dangerous condition of public property (§ 830 et seq.) and (2) negligence. The complaint alleges plaintiff tripped, fell, and was injured while walking on a City sidewalk, near the northeast corner of Rancho California Road and Meadows Parkway at

---

[1] Undesignated statutory references are to the Government Code.

approximately 4:00 p.m. on December 12, 2015. A "raise" in the sidewalk's elevation caused plaintiff to trip and fall.[2]

B. *The City's Motion*

The City moved for summary judgment, or summary adjudication, on the ground the sidewalk defect was trivial as a matter of law. (§ 830.2.) The City adduced plaintiff's deposition testimony in which he testified he did not know whether he tripped with his right or left foot, but he knew he fell forward and first hit his head, then his face and hands, on the sidewalk. A concrete panel was "lifted" in the sidewalk. The City also adduced the declaration of its expert, Ned Wolfe, a mechanical engineer who specialized in accident reconstruction. On October 4, 2017, nearly two years after plaintiff alleged he fell on December 12, 2015, Wolfe inspected the sidewalk and measured the height differential or rise between the "lifted" concrete panel and the lower, adjacent panel. The panels had been beveled or ground down since plaintiff alleged he fell, but by using a leveler, Wolfe determined the height of the rise between the panels before they were beveled—the height differential.

Before the panels were beveled, the height differential ranged from a low of 9/16 of an inch to a high of one inch—measured between three feet and one foot, respectively, "along the diagonal joint from the edge of the dirt, which would correspond to an area

---

[2] The City cross-complained for indemnity against the owner of the property adjacent to the sidewalk, alleging a tree on the property was responsible for the defective sidewalk. Plaintiff subsequently amended his complaint to name the property owner as a defendant.

starting at 8 inches from the [right] side of the walkway." The right side of the walkway was to plaintiff's right as he was walking. "Only the very right two feet of the deviation [along the diagonal seam between the two concrete panels] was greater than 3/4 of an inch." There were no jagged edges or broken concrete in the height differential. The raised panel was removed on October 4, 2017, and Wolfe saw that a large tree root from the adjacent property had caused the panel to rise.

Wolfe reviewed the deposition testimony of plaintiff and Valentina N., who saw plaintiff fall. According to Valentina N., plaintiff was walking "closer to [the] dirt" or to the sidewalk's right edge, when he fell. Photographs show a level dirt area to the right of the sidewalk. Neither plaintiff nor Valentina N. indicated exactly where plaintiff was walking when he fell. Wolfe opined that "[a] pedestrian generally walks at least 8 inches from the separation between the edge of the sidewalk and the adjacent dirt area." Thus, Wolfe opined that if plaintiff fell, his "foot (most likely the toe) would have struck between approximately 1 foot and 3 feet along the diagonal joint [the height differential] from the edge of the dirt, which would correspond to an area starting at 8 inches from the side of the walkway." The City thus claimed that plaintiff must have fallen on the height differential at least eight inches from right side of the walkway, where the height differential was no higher than one inch.

The City also adduced the declaration of Rodney T., who, in his capacity as the City's maintenance superintendent for the previous seven years, or since 2010, was notified when claims were made against the City for trip and fall accidents on City

4

sidewalks. Other than plaintiff's December 2015 accident, Rodney T. knew of no other trip and fall accidents at the northeast corner of the intersection where plaintiff claimed he fell, and no accidents had been reported on other corners of the same intersection.

C. *Plaintiff's Opposition*

In opposition, plaintiff argued the City did not meet its initial burden of showing plaintiff could not establish the duty element of its causes of action by showing that the height differential was a dangerous condition. Plaintiff claimed the City was relying solely on the size of the height differential to show it was a trivial defect and was disregarding other circumstances which showed that the height differential was a dangerous condition. Plaintiff specifically claimed that leaves, dirt, other debris, and the shadow from a light pole all obscured a pedestrian's view of the height differential at the time plaintiff fell, and these factors, in addition to the size of the height differential, rendered the height differential a dangerous condition. Plaintiff argued his evidence showed there was a triable issue whether the height differential was a dangerous condition.

Plaintiff also argued the City had a policy of beveling sidewalk height differentials of one-half inch or higher, and that standards promulgated pursuant to the Americans With Disabilities Act (ADA) and by the American Society for Testing and Materials (ASTM) required that "sidewalk variances of more than one-half inch between panels be ground down." Plaintiff argued the City should have discovered the height differential in 2014 and 2015, when ADA ramps were installed at the intersection and the City

inspected the sidewalks near where the ADA ramps were to be installed, including at the intersection's northeast corner, where plaintiff later fell.

Plaintiff adduced additional excerpts from his and Valentina N.'s depositions. Plaintiff testified he fell at approximately 3:00 p.m. on December 12 or 13, 2015. The weather was sunny and dry. When he fell, he was carrying two of Valentina N.'s real estate signs, one in each hand and under each arm. He was helping Valentina N., a real estate agent, who had an open house in the area. He had just picked up the two real estate signs from the dirt area near the sidewalk at the intersection's northeast corner, walked a few steps, then fell. When he fell, Valentina N. was standing in the median of Meadows Parkway, waiting to cross the street to join plaintiff on the northeast corner. Plaintiff lived near Meadows Parkway, around "32 paces" from where he fell. He did not see the height differential before he tripped. Valentina N. estimated that plaintiff fell between 4:30 and 5:00 p.m., when it was "dusky."

Plaintiff also adduced his declaration, purporting to authenticate two photographs of the sidewalk where he fell. One photograph had been attached to plaintiff's deposition as exhibit 21, and the location of his fall was circled on the photograph. This photograph showed the shadow from a nearby light pole partially obscuring the height differential. Neither plaintiff's declaration nor any other evidence indicates the date or time this photograph was taken. The second photograph shows dirt and debris in and near the height differential, including at the sidewalk's right edge where the height differential "was deepest." The second photograph also shows the shadow from the light pole falling

6

almost perfectly on, and obscuring a pedestrian's view of, the height differential and the entire diagonal seam between the two (now beveled) concrete panels. In his declaration, plaintiff averred he took the second photograph on January 3, 2016, "at about the same time of day" as his accident.

Plaintiff also adduced from his expert, Mark Burns, a forensic engineer with experience in accident reconstruction. Burns agreed with Wolfe that "an adjacent tree" had caused the height differential. Burns did not dispute Wolfe's measurements of the height differential, and based on Wolfe's measurements, Burns calculated that the height differential was one and 7/32 inches (or 1.21875 inches) high at the sidewalk's far right edge at the time plaintiff fell. Burns opined that "industry standards, including ADA and ASTM" required height differentials of more than one-half inch to be beveled or ground down.

Burns further opined that the City knew or should have known of the height differential because "Google Street View images" showed it was "in a substantially similar condition" in 2014 and in 2015, before plaintiff fell. Burns claimed that pedestrians "often scan the ground 10-15 feet ahead of them as they walk," and that dirt, debris, and the light pole shadow would have obscured the height differential from pedestrian view when plaintiff fell.

In support of his claim that the City had a policy of beveling height differentials greater than one-half inch, plaintiff relied on deposition testimony of the City's engineer, Chris W., and its maintenance superintendent, Rodney T. Rodney T. told City employees

7

under his supervision to "[l]ook out for" height differentials of one-half inch or higher. But no one in the City's public works department or the City manager had ever issued any verbal or written instructions to look for such height differentials, and Rodney T. knew of no such written City procedures or policy. Chris W. was tasked with inspecting City sidewalks and walkways to locate defects that "would not meet ADA compliance." In 2014 and 2015, the City installed "ADA ramps" at the intersection of Meadows Parkway and Rancho California Road, including at its northeast corner where plaintiff later fell. In connection with the ADA ramps' installation, City sidewalk panels were replaced at the intersection, including panels adjacent to the two panels that formed the height differential that plaintiff later claimed he tripped on. Chris W. inspected the northeast corner of the intersection before the ADA ramps were installed, but he did not see the height differential; if he had, it would have been fixed.

Plaintiff filed evidentiary objections to Wolfe's statements that (1) "[a] pedestrian generally walks at least 8 inches from the separation between the edge of the sidewalk and the adjacent dirt area," and that (2) plaintiff's foot or toe would have struck the height differential at least eight inches from the sidewalk's right edge—as speculative and lacking foundation. The court declined to rule on these objections as not dispositive of the motion.

D. *The City's Reply*

In reply, the City argued there was no evidence that any dirt, debris, or a light pole shadow obscured the height differential at any of the times or dates plaintiff was claiming

8

he fell, namely, between 3:00 and 5:00 p.m. on December 12 to 15, 2015. Metadata on plaintiff's phone showed that the photograph plaintiff took of the light pole shadow obscuring the height differential was taken on January 11, 2016, at 2:03 p.m., not "at about the same time" plaintiff fell, or on January 3, 2016, as plaintiff was claiming. Plaintiff's evidence that dirt, debris, and a shadow obscured the height differential lacked foundation. Plaintiff had also been inconsistent about the date he fell. In his deposition, he claimed he fell on the weekend of December 12 or 13, 2015, but he later testified he may have fallen on December 14 or 15, "a day or two" before he went to the hospital.

The City pointed out that Burns did not dispute Wolfe's measurements of the height differential—that it ranged from 9/16 of an inch to one inch between three feet and one foot from the right edge of the sidewalk—and Burns also did not dispute Wolfe's opinion that plaintiff's foot or toe would have struck the height differential during this range. The City argued there was no evidence to support plaintiff's claim that the City had a policy of beveling height differentials of one-half inch or higher. Even if the City had such a policy, the City argued, "[t]he fact that the City strives to eliminate trivial defects does not expose it to liability." ADA and other guidelines which require height differentials of one-half inch or higher to be beveled did not "trump" the City's trivial defect defense.

In response to plaintiff's claim that the City had notice of the height differential in 2014 or 2015, before plaintiff fell, the City pointed out that its motion was not based on its lack of notice of the height differential. Still, the City adduced additional excerpts of

9

Chris W.'s deposition, showing that the ADA ramps were installed at the intersection in 2009, not in 2014 or 2015 as plaintiff was claiming.

We observe, however, that Chris W. also testified that concrete panels adjacent to the raised panel where plaintiff later fell were replaced in connection with "a different project," not the ADA ramps project. Chris W. averred that he inspected portions of the City sidewalks in connection with a "2014/2015 project," and if he had seen a raised panel, it would have been fixed.

In a supplemental declaration, Rodney T. averred that over the course of his 18-year employment with the City (not just his previous seven-year employment as the City's maintenance superintendent) he had been notified of every trip and fall accident occurring on City sidewalks, and plaintiff's accident was the only one that had occurred at the intersection or its northeast corner during this 18-year period.

Lastly, the City objected to several of plaintiff's evidentiary submissions as lacking foundation. These included: (1) Burns's statement that, "[p]hotographs taken by the Plaintiff on January 3, 2016 . . . under similar lighting conditions to those that existed at the time of Plaintiff's fall . . . show that the shadow from the adjacent light pole was directly on the subject height differential" [Objection No. 1], and (2) plaintiff's statement in his declaration that the photograph he took of the shadow from the light pole obscuring the height differential—was taken "at about the same time as [plaintiff's] accident" [Objection No. 6]. The court sustained these objections and declined to rule on the rest of the City's objections as not dispositive to the motion.

10

E. *The Trial Court's Ruling*

Before the hearing on the City's motion, the court issued a tentative ruling granting the City's motion for summary judgment. In its tentative ruling, the court wrote: "Plaintiff argues that the City has failed to meet its initial burden because it only provides evidence regarding the height differential between the two slabs of cement. However, this is not correct. City provides evidence that the sidewalk in question had no jagged or broken edges on the sidewalk slab. (Declaration of Ned Wolfe ¶8.) The height differential between the two slabs of sidewalk range from 9/16 of an inch to 1 inch. (Declaration of Ned Wolfe ¶16-18.) City's Maintenance Superintendent was unaware of any other trip and fall incidents on the sidewalk in question. (Declaration of Rodney [T.] ¶ 3.) This information is sufficient[;] City meets its initial burden that the defect is trivial.

"Plaintiff, in turn, contends he has sufficient evidence to establish a triable issue of material fact. Plaintiff asserts that at around the time of the accident on a date approximately three weeks after the accident occurred (January 3rd), a photograph was taken showing a shadow on the area where the accident occurred. This assertion is problematic. First, Plaintiff never contends in his declaration or deposition excerpts that he had a difficult time seeing the sidewalk due to a shadow. In fact, there is no evidence that he noticed a shadow on the date of the accident. Second, it is unclear what time the photograph was taken. Plaintiff's declaration indicates that the photograph was taken 'at about the same time of day' as the accident. However, it is unclear what this means

11

(within five minute[s], ten minutes, twenty minutes . . .). It is also unclear what time Plaintiff's accident occurred. Plaintiff testified that the accident occurred at about 3:00 pm when it was sunny. (Plaintiff's deposition, 55:12-15.) The individual he was with at the time testified that the accident occurred between 4:30 and 5:00 and it was 'dusky' at the time. (Valentina [N.'s] deposition, 52:19-25.)

"Plaintiff next argues that there is a triable issue of material fact because there is a dispute as to whether there were leaves or dirt on the sidewalk that hid the defect or contributed to the accident. While Plaintiff points to photographs taken after the accident that shows dirt and/or leaves on the sidewalk, there is no evidence that at the time of the accident there were dirt or leaves on the sidewalk. Plaintiff also argues that the height difference in the sidewalk violated a City policy and therefore shows a triable issue of material fact. However, Plaintiff provides no evidence that such a City policy exists. Plaintiff only provides evidence that the City's Maintenance Superintendent instructed the individuals who worked for him to grind down sidewalk slabs they found that had a half inch or greater height difference from the adjacent slab. However, City's Maintenance Superintendent testified that he was not aware of any City policy that called for the grinding. (Rodney [T.], 105:17-21.) Plaintiff also appears to assert that City should have known about the raised sidewalk because an ADA compliant ramp was placed in the area[] sometime before the accident. However, it is unclear when the ramp was put in place and whether the raise in the sidewalk existed at this time frame.

"Plaintiff next argues that there is a triable issue because the height difference in the slabs violated ADA regulations. Plaintiff provides no authority that a defect cannot be trivial if it is in excess of the ADA regulations. Based on other court rulings that found height differences of [one] inch to be a trivial defect, it does not appear that this argument has merit. [(*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927.)] [¶] Hence, Plaintiff has failed to provide any evidence to meet his burden."

At the hearing, the court sustained the City's evidentiary objections Nos. 1 and 6, and took the matter under submission. The court later issued an order overruling the parties' other evidentiary objections as "not dispositive," and granted the City's motion for summary judgment. Judgment was entered in favor of the City on plaintiff's complaint, and plaintiff appealed.

### III. DISCUSSION

Plaintiff claims the judgment must be reversed for two reasons: (1) the City failed to meet its initial burden of making a prima facie evidentiary showing that one or more elements of plaintiff's causes of action against the City could not be established, and (2) the court erroneously concluded that the height differential in the sidewalk was, under the circumstances, trivial as a matter of law. We disagree on both counts. In our de novo review, we conclude the City met is initial burden, and the height differential was, under the circumstances, trivial as a matter of law.

13

A. *Standard of Review*

A motion for summary judgment is to be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment bears an initial burden of showing that the plaintiff's causes of action have no merit, and the defendant meets this burden by making a prima facie evidentiary showing that one or more elements of each cause of action cannot be established, or there is a complete defense to each cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849-851 (*Aguilar*); Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant meets its initial burden, the burden shifts to the plaintiff to produce evidence of a triable issue of material fact concerning the challenged element or defense. (*Aguilar*, *supra*, at pp. 849-851; Code Civ. Proc., § 437c, subd. (p)(2).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, at p. 850.) Throughout the motion, however, the moving party bears an overall *burden of persuasion* that there is no triable issue of material fact and that the moving party is entitled to judgment as a matter of law. (*Id.* at p. 850 & fn. 11.)

An order granting summary judgment is reviewed de novo, and the appellate court considers all of the evidence adduced on the motion (except evidence that the trial court properly excluded) and the uncontradicted inferences the evidence reasonably supports.

14

(*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)  The appellate court must liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.  (*Zubillaga v. Allstate Indemnity Co.* (2017) 12 Cal.App.5th 1017, 1021.)  The trial court's reasons for granting the motion are not binding on appeal, because the appellate court reviews the trial court's ruling, not its rationale.  (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

B.  *The City's Motion for Summary Judgment Was Properly Granted*

    1.  <u>Statutes Governing the City's Liability</u>

The Government Claims Act (§ 810 et seq.) governs the City's liability.  "Liability may attach to a governmental entity if there is a dangerous condition on governmental property.  (§§ 830, 835.)  A condition is 'dangerous' if it creates a 'substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used.'  (§ 830, subd. (a).)  Conversely, a condition is 'not dangerous,' if 'the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property . . . was used with due care . . .' in a reasonably foreseeable manner.  (§ 830.2.)

"According to section 835, '[e]xcept as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes

15

that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity . . . created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.' [(§ 835.)]" (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 565-566 (*Stathoulis*).)

### 2. The Trivial Defect Doctrine

"The trivial defect doctrine originated to shield public entities from liability where conditions on public property create a risk 'of such a minor, trivial or insignificant nature in view of the surrounding circumstances . . . no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used.'" (*Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 27.) The trivial defect doctrine is not an affirmative defense. It is an aspect of duty that a plaintiff must plead and prove. (*Cadam v. Somerset Gardens Townhouse HOA* (2011) 200 Cal.App.4th 383, 388.)

In appropriate cases, the trial court may determine, and the appellate court may determine de novo, whether a given walkway defect was trivial as a matter of law. (§ 830.2; *Stathoulis*, *supra*, 164 Cal.App.4th at p. 569.) "Where reasonable minds can

16

reach only one conclusion—that there was no substantial risk of injury—the issue is a question of law, properly resolved by way of summary judgment." (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 929 (*Caloroso*).) If, however, the court determines that sufficient evidence has been presented so that reasonable minds may differ as to whether the defect presents a substantial risk of injury, the court may not conclude that the defect is trivial as a matter of law. (*Kasparian v. AvalonBay Communities, Inc.*, *supra*, 156 Cal.App.4th at p. 28.)[3]

In determining whether a given walkway defect is trivial as a matter of law, the court should *not* rely solely upon the size of the defect—in this case, on the depth or height of the walkway depression or elevation—although the defect's size "may be one of the most relevant factors" to the court's decision. (*Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 734.) The court should consider other circumstances which might have rendered the defect a dangerous condition at the time of the accident. (*Ibid*.)

These other circumstances or factors include whether there were any broken pieces or jagged edges in the area of the defect, whether any dirt, debris or other material obscured a pedestrian's view of the defect, the plaintiff's knowledge of the area, whether the accident occurred at night or in an unlighted area, the weather at the time of the accident, and whether the defect has caused any other accidents. (*Fielder v. City of*

---

[3] "The rule which permits a court to determine 'triviality' as a matter of law rather than always submitting the issue to a jury provides a check valve for the elimination from the court system of unwarranted litigation which attempts to impose upon a property owner what amounts to absolute liability for injury to persons who come upon the property." (*Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 399.)

*Glendale*, *supra*, 71 CalApp.3d at p. 734; *Stathoulis*, *supra*, 164 Cal.App.4th at p. 567.) In sum, "[a] court should decide whether a defect may be dangerous only after considering all of the circumstances surrounding the accident that might make the defect more dangerous than its size alone would suggest." (*Caloroso*, *supra*, 122 Cal.App.4th at p. 927.)

The court's analysis of whether a walkway defect is trivial involves as a matter of law two essential steps. "First, the court reviews evidence regarding type and size of the defect. If that preliminary analysis reveals a trivial defect, the court considers evidence of any additional factors [bearing on whether the defect presented a substantial risk of injury]. If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law . . . ." (*Stathoulis*, *supra*, 164 Cal.App.4th at pp. 567-568.)

3. Analysis

(a) *The City Met Its Initial Burden*

Plaintiff claims the City did not meet its initial burden of showing plaintiff could not establish the duty element of his causes of action against the City for (1) maintaining a dangerous condition of public property, and (2) negligence.[4] We disagree.

---

[4] Although the City did not address plaintiff's negligence cause of action in its motion, its liability to plaintiff for the alleged dangerous condition of the sidewalk defect or height differential is governed solely by the Government Claims Act. (§ 810 et seq.; see *TrafficSchoolOnline, Inc. v. Clarke* (2003) 112 Cal.App.4th 736, 741 [the intent of the former Tort Claims Act (currently the Government Claims Act), "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances . . . ."].) Thus, plaintiff's

*[footnote continued on next page]*

18

In its moving papers, the City showed that its accident reconstruction expert, Wolfe, had calculated that the height differential at the time of plaintiff's accident ranged from 9/16 of an inch to one inch, at three feet and one foot, respectively, "along the diagonal joint from the edge of the dirt, which would correspond to an area starting at 8 inches from the [right] side of the walkway." The right side of the walkway was to plaintiff's right, as he was walking. "Only the very right two feet of the deviation [along the diagonal seam between the two concrete panels] was greater than 3/4 of an inch."

Wolfe acknowledged Valentina N. had testified that plaintiff was walking "closer to the dirt" or to the sidewalk's right edge when he fell, but Wolfe had not seen any testimony, from plaintiff or Valentina N., the only witnesses to plaintiff's fall, stating "how far Plaintiff was from the separation between the dirt and the sidewalk when he fell." Wolfe thus opined that "[a] pedestrian *generally* walks at least 8 inches from the separation between the edge of the sidewalk and the adjacent dirt area." (Italics added.) Wolfe thus "assumed" that, if plaintiff fell, his foot and most likely his toe would have struck the height differential between one and three feet along the diagonal or seam separating the two concrete panels, which corresponded to an area at least eight inches to the left of the sidewalk's right edge. There were no broken pieces or jagged edges of concrete "in the area of the deviation" when Wolfe inspected it on October 4, 2017, after

*[footnote continued from previous page]*
*[footnote continued from previous page]*
negligence cause of action does not state a separate basis or standard for the City's liability, apart from plaintiff's cause of action for "dangerous condition of public property" which is alleged pursuant to sections 830, 835, and 835.2.

the deviation or height differential had been beveled.  And aside from plaintiff's claim, the City had never received any complaints about the area or claims for trip and fall injuries in the area.

As the trial court concluded, this evidence made a prima facie showing that plaintiff could not establish that the height differential was a dangerous condition under the circumstances at the time plaintiff alleged he fell.  (*Aguilar*, *supra*, 25 Cal.4th at pp. 849-850.)  Sidewalk elevations ranging from three-quarters of an inch to one and one-half inches have generally been held trivial as a matter of law.  (*Caloroso*, *supra*, 122 Cal.App.4th at p. 927, citing *Barrett v. City of Claremont* (1953) 41 Cal.2d 70, 74 [and cases cited therein] and *Fielder v. City of Glendale*, *supra*, 71 Cal.App.3d. at p. 724, fn. 4 [same].)  The City's prima facie showing shifted the burden to plaintiff to raise a triable issue of material fact concerning whether the height differential was trivial as a matter of law under the circumstances.  (*Aguilar*, *supra*, at p. 849.)

Plaintiff argues the City did not meet its initial burden because Wolfe's statement that pedestrians generally walk at least one foot from the edge of a sidewalk *and, therefore,* that plaintiff must have struck his foot or toe on the height differential at least one foot from the sidewalk's far right edge, as measured along the diagonal seam separating the two concrete panels forming the height differential, are "utterly speculative" and lack foundation.  We disagree.

A person is qualified to testify as an expert if the person has special knowledge, skill, experience, training or education sufficient to qualify the person as an expert on the

20

subject to which the person's testimony relates (Evid. Code, § 720, subd. (a)), and the expert's qualifications may be shown by any admissible evidence, including the expert's own testimony (*id.* at subd. (b)). Wolfe's declaration shows he is a mechanical engineer with specialized expertise in "walking surface slip testing" and "layout safety analysis." Wolfe's expertise qualified him to testify as an expert on where pedestrians generally walk on sidewalks. Questions about the depth or scope of Wolfe's knowledge or expertise go to the weight, not the admissibility, of his testimony. (*People v. Jackson* (2016) 1 Cal.5th 269, 328.) Wolfe's opinion that plaintiff's foot or toe must have struck the height differential at least one foot to the left of the sidewalk's right edge is also admissible because it is based on Wolfe's expertise concerning where pedestrians *generally* walk on sidewalks. (*People v. Bolin* (1998) 18 Cal.4th 297, 321-322 [expert's opinion concerning positions of murder victims' bodies admissible based on expert's qualifications in, among other things, blood spatter analysis and crime scene investigations].) Wolfe averred that no other evidence he had reviewed, including the deposition testimony of Valentina N. or plaintiff, the only witnesses to plaintiff's fall, indicates exactly where plaintiff was walking when he tripped and fell.

Plaintiff further argues that the City did not meet its initial burden because, in its initial showing, the City did not address "the surrounding factors that made the so called 'trivial defect' still dangerous," including the ADA standards and the City's maintenance superintendent, Rodney T.'s "acknowledge[ment]" that height differentials of greater than one-half inch are "a tripping hazard." But the City was not required to address the

21

ADA standards, or Rodney T.'s testimony, in its initial showing, because plaintiff did not allege in his complaint that Rodney T.'s acknowledgement, the ADA standards, or any other standards rendered the height differential a dangerous condition. (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 848 [party moving for summary judgment must show there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading].) The City met its initial burden by making a prima facie showing that the height differential was not a tripping hazard, because plaintiff likely tripped on it where it was no more than one inch high, that there were no broken concrete pieces or jagged concrete edges in the height differential or seam between the two concrete panels at the time plaintiff fell, and that, as far as the City knew, no other persons other than plaintiff had tripped or fallen on the height differential.

(b) *The Height Differential Was Trivial as a Matter of Law*

Plaintiff next claims the trial court erroneously concluded that the height differential or "sidewalk vertical displacement" was a trivial defect as a matter of law. On de novo review, we agree with the trial court. All of the papers presented on the motion show that the height differential was a trivial defect as a matter of law at the time plaintiff fell, under all of the relevant circumstances as shown by the evidence. In his opposition, plaintiff did not adduce evidence sufficient to raise a triable issue of fact whether the size of the height differential itself, or any other circumstances concerning it, rendered it a dangerous condition.

22

To begin, it is undisputed that the height differential ranged between 9/16 of an inch to one inch, at three feet and one foot, respectively, from the far right edge of the sidewalk as plaintiff was facing or walking, and as measured "along the diagonal joint from the edge of the dirt, which would correspond to an area starting at 8 inches from the [right] side of the walkway." "Only the very right two feet of the deviation was greater than 3/4 of an inch." It is also undisputed that the height differential was at its highest at one and 7/32 inches, or 1.21875 inches, at the sidewalk's right edge. There were no broken concrete pieces or jagged concrete edges in the area of the height differential when plaintiff fell, and plaintiff adduced no evidence that the City had ever been notified of any trip and fall accidents, other than plaintiff's claim, on or near the area of the height differential.

Plaintiff attempted but failed to show that dirt and debris, including leaves, and the shadow from a light pole on the northeast corner of the intersection where plaintiff fell, obstructed a pedestrian's view of the sidewalk and height differential at the time plaintiff fell. The court correctly sustained the City's objections to plaintiff's proffered photographs of dirt, debris, and the shadow obscuring the height differential as lacking in sufficient foundation. No evidence showed that these photographs were taken at any time near the dates or the times of day plaintiff claimed he fell or that these photographs showed the conditions on the sidewalk at the time plaintiff fell. Plaintiff neither alleged in his complaint, nor stated in his declaration or deposition, that he had a difficult time seeing the height differential because dirt, debris, or a shadow obscured it from view.

23

Plaintiff claims the trial court overlooked other photographs of the sidewalk area and the height differential which were taken on plaintiff's phone. Indeed, in its reply, the City adduced nine additional photographs, taken on plaintiff's phone, which, according to the City and the phone's metadata, were taken between 12:49 p.m. and 12:53 p.m. on December 16, 2015, two to four days after December 12, 2015, the day plaintiff first alleged he fell (the December 16 photographs). It is unclear whether the trial court considered the December 16 photographs in its decision.

The December 16 photographs show the height differential before it was beveled and show *some* dirt and leaves in and near the height differential. But none of the dirt or leaves depicted in the December 16 photographs substantially obscured the height differential from a pedestrian's view. All of the December 16 photographs show that the sidewalk area surrounding the height differential was in good condition and was reasonably clean. In addition, plaintiff's accident reconstruction expert, Burns, opined that pedestrians generally scan an area 10 to 15 feet in front of them as they walk. Plaintiff's evidence shows he fell during the daytime, when it was still light outside, and the weather was dry. Plaintiff averred it was "sunny and dry" when he fell, and Valentina N. testified it was "dusky." Plaintiff fell sometime between 3:00 p.m. and 5:00 p.m. on December 12 to 15, 2015.

Thus, the entire record, construed in the light most favorable to plaintiff, shows that the height differential would have been in plain sight and, therefore, would have been avoidable to a pedestrian walking on the sidewalk and approaching the height differential

24

"with due care" at the time plaintiff fell.  (§§ 830, 830.2.)  To be sure, the height differential posed *some* risk of injury.  Construed in the light most favorable to plaintiff, the record supports a reasonable inference that height differentials higher than *one-half inch* pose a trip hazard to pedestrians.[5]  But to constitute a dangerous condition, the height differential, and the area surrounding it, must have posed "a substantial (as distinguished from a minor, trivial or insignificant) risk of injury" when "used with due care in a manner in which it is reasonably foreseeable that it will be used."  (§§ 830, 830.2.)  On this record, this standard was not met.

Our analysis does not depend on Wolfe's assumption that plaintiff would have been walking nearer to the middle of the sidewalk, specifically between one and three feet from the sidewalk's right edge, where the height differential ranged from 9/16 of an inch to one inch, rather than at the sidewalk's right edge where the height differential was at its highest at one and 7/32 inches, or 1.21875 inches.  According to Valentina N., plaintiff was walking "closer to the dirt" or to the sidewalk's right edge when he fell.  The evidence also shows that plaintiff had just picked up two real estate signs from the

---

[5]  The deposition testimony of the City's maintenance superintendent, Rodney T., that he instructs City employees he supervises to bevel height differentials higher than one-half inch, and Burns's expert declaration that ADA and ATSM standards require height differentials of greater than one-half inch to be beveled, indicates that height differentials higher than one-half inch pose trip hazards to pedestrians.  But nothing in the record supports a reasonable inference, or raises a triable issue, that the City had a policy of or that the ADA, the ATSM, or any other standards required the City to bevel height differentials higher than one-half inch.  (See *Caloroso*, *supra*, 122 Cal.App.4th at pp. 928-929 [record did not support reasonable inference or raise triable issue whether the defendant's noncompliance with certain building codes and standards rendered sidewalk condition dangerous].)

dirt area next to the sidewalk, and he was carrying them in his hands and under his arms when he fell. Based on this evidence, a jury could reasonably infer that plaintiff tripped on the highest point of the height differential when he fell. Even so, the entire record indisputably shows that the height differential was in plain sight and did not pose a substantial risk of injury to a pedestrian using "due care" at the time plaintiff fell. (§§ 830, 830.2.)

## IV. DISPOSITION

The judgment is affirmed. The City shall recover its costs on appeal.


FIELDS

J.

We concur:


MCKINSTER

P. J.

RAPHAEL

J.

Filed 7/26/19

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

**<u>ORDER</u>**

CHARLES HUCKEY,           E070213
    Plaintiff and Appellant,

                            (Super.Ct.No. MCC1600451)

    v.

                            ORDER CERTIFYING

CITY OF TEMECULA,           OPINION FOR PUBLICATION
    Defendant and Respondent.

_____

THE COURT

      The requests for publication of the nonpublished opinion filed in the above matter July 17 and 18, 2019, are GRANTED. The opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c)(2), (3), and (6).

      IT IS SO ORDERED that said opinion filed June 28, 2019, be certified for publication pursuant to California Rules of Court, rule 8.1105(b).

                                         <u>FIELDS</u>
                                                   J.

We concur:

<u>McKINSTER</u>
          Acting P. J.

<u>RAPHAEL</u>
          J.

1