Filed 5/16/23  Romero v. American Multi-Cinema, Inc. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ALMA ROMERO, | D080327 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2020-00024796-CU-PO-CTL) |
| AMERICAN MULTI-CINEMA, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Reversed.

Sullivan, Rivera, Osuna & Sullivan and Luis O. Osuna for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester, Brian T. Moss, Karen Liao and Mark Wilson, for Defendant and Respondent.

In this trip-and-fall case, plaintiff Alma Romero appeals from a judgment entered against her after the trial court granted a defense motion for summary judgment in her premises liability case against defendant American Multi-Cinema, Inc. (AMC).  The trial court found that a bolt fragment embedded in a concrete walkway and protruding one-half inch

above the surface about 10 feet in front of the box office of AMC's movie theater constituted a trivial defect as a matter of law. Based on our de novo review and the holding of *Dolquist v. City of Bellflower* (1987) 196 Cal.App.3d 261, 267–268 (*Dolquist*), we conclude that reasonable minds could differ as to whether the defect presented a substantial risk of injury. Accordingly, we reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Incident*

Between 6:00 p.m. and 6:30 p.m. on July 10, 2019, Romero and her boyfriend, Albert Magana, were taking his nephews to the movies at the AMC Promenade Movie Theater on Dennery Road in San Diego. It was a sunny day, and Romero was wearing flip-flop sandals. She had never been to that movie theater before.

As they were walking directly to the movie theater from the parking lot right outside, Romero's right foot hit a metal object protruding from the walkway about 10 feet away from the AMC box office. Her sandal got stuck on the protrusion, and she lost her balance and fell. She suffered injuries that required medical attention.

There were six metal studs protruding from the walkway where Romero fell. They appeared to be the remains of some bolts that had been left there after a light post was removed earlier in 2019. There were construction barricades outside the theater on the date of the incident.

Romero tripped on the highest of the bolts. In deposition, she initially estimated that it was about one inch high, but then revised her estimate to a little over one-half inch after she was shown a ruler. Magana also estimated that it was about one-half inch high. The other protruding bolts were less than one-half inch high, and one was almost completely flat.

2

Romero was looking ahead towards the box office when she fell. She did not see the bolts because they were the same "grayish" color as the concrete and there were no warning signs or cones.

After the fall, Romero reported the incident to the AMC manager. The manager nodded her head as if to acknowledge that she was already aware of the bolts. Magana offered to show them to her, but "she said that was fine." Romero was not aware of anyone else having suffered a similar fall at the AMC theater.

B.     *Trial Court Proceedings*

Romero filed a complaint against AMC alleging a single cause of action for premises liability. She alleged that AMC and its agents "created a dangerous condition when they removed a sign post that was positioned near the box office. When they did this they cut out the metal bolts holding the post and allowed the remaining portion of the bolts to stick up above the level of the ground creating a tripping hazard. Plaintiff, Alma Romero[,] tripped on one of these metal bolts and fell to the ground causing her injuries."

AMC filed a summary judgment motion asserting that the condition was a trivial defect as a matter of law. In opposition, Romero argued that there were triable issues of material fact on the issue.

The trial court granted AMC's motion for summary judgment and found that the protruding bolts constituted a trivial defect as a matter of law. The court based its decision on the "undisputed" facts that "the protrusions ranged from 'almost completely flat' to approximately 1/2 inch," "Plaintiff does not know how long the protrusions had been on the ground, whether there had been any prior incidents, or whether Defendant even knew of the condition," and "it was a sunny day [and] there was nothing obstructing

3

Plaintiff's view of the sidewalk." After the court entered judgment for AMC, Romero filed a timely appeal.

## DISCUSSION

The sole question presented in this appeal is whether the protruding metal bolt that caused Romero to trip and injure herself on AMC's premises constituted a trivial defect as a matter of law. We review the trial court's summary judgment ruling de novo, liberally construing the evidence and drawing all reasonable inferences in support of Romero as the party opposing the motion. (*Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1103 (*Huckey*).)

"It is well established that a property owner is not liable for damages caused by a minor, trivial or insignificant defect in property." (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927 (*Caloroso*).) "Courts have referred to this simple principle as the 'trivial defect defense,' although it is not an affirmative defense but rather an aspect of duty that plaintiff must plead and prove. The 'trivial defect defense' is available to private, nongovernmental landowners." (*Ibid.*)

"In limited circumstances a court may determine a walkway defect is trivial as a matter of law." (*Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 226 (*Fajardo*).) " 'Where reasonable minds can reach only one conclusion—that there was no substantial risk of injury—the issue is a question of law, properly resolved by way of summary judgment.' " (*Ibid.*) "But where 'sufficient evidence has been presented so that reasonable minds may differ as to whether the defect is dangerous,' summary judgment is inappropriate." (*Ibid.*, internal quotation marks omitted.) If "reasonable minds may differ as to whether the defect presents a substantial risk of injury, the court may not

4

conclude that the defect is trivial as a matter of law." (*Huckey*, *supra*, 37 Cal.App.5th at p. 1105.)

There are two steps in determining whether a walkway defect is trivial as a matter of law. (*Huckey*, *supra*, 37 Cal.App.5th at p. 1105.) First, the court must review the evidence regarding the type and size of the defect. Second, the court must consider evidence of any additional factors bearing on whether the defect presented a substantial risk of injury. If the circumstances do not indicate that the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law. (*Ibid*.)

A defect cannot be found trivial as a matter of law based solely on its size, "since a tape measure alone cannot be used to determine whether the defect was trivial." (*Caloroso*, *supra*, 122 Cal.App.4th at p. 927.) "A court should decide whether a defect may be dangerous only after considering all of the circumstances surrounding the accident that might make the defect more dangerous than its size alone would suggest." (*Ibid*.) There is no "minimum level of irregularity . . . required to defeat summary judgment." (*Fajardo*, *supra*, 85 Cal.App.5th at p. 229.)

We begin our analysis with the type and size of the defect. (*Huckey*, *supra*, 37 Cal.App.5th at p. 1105.) With regard to the type, we must take into account "whether the defect consisted of a mere difference in level of two adjacent horizontal slabs as distinguished from a protrusion such as a piece of steel reinforcement (rebar) sticking above the concrete . . . ." (*Dolquist, supra*, 196 Cal.App.3d at pp. 267–268.) "Unlike sidewalk cases, where the planes are horizontal, a protrusion such as a piece of metal rebar located in an area where foot traffic occurs poses a greater danger . . . ." (*Id*. at p. 270.)

The type of defect at issue here is a metal object embedded in and protruding from a concrete walkway, not an uneven sidewalk.

With regard to size, the bolt Romero tripped over protruded approximately one-half inch above the concrete. In cases involving uneven sidewalks, California courts have generally found elevation differences of up to one inch or even more to be trivial as a matter of law. (See *Huckey*, *supra*, 37 Cal.App.5th at p. 1107 ["Sidewalk elevations ranging from three-quarters of an inch to one and one-half inches have generally been held trivial as a matter of law"].) But in *Dolquist*, the court found that a one-quarter inch protrusion of steel that caused the plaintiff to trip over a concrete tire stop was not a trivial defect as a matter of law. (*Dolquist*, *supra*, 196 Cal.App.3d at pp. 266–270.) Because this case involves a similar type of metal protrusion from a concrete surface, the type and size of the defect alone do not establish the existence of a trivial defect as a matter of law.

We next consider additional factors bearing on whether the defect presented a substantial risk of injury. In *Dolquist*, the plaintiff tripped when her heel caught on a piece of rebar that was protruding one-quarter inch from the top of a concrete tire stop in a parking lot. (*Dolquist*, *supra*, 196 Cal.App.3d at pp. 264–265.) There was no evidence of any prior accident involving the protrusion, and the accident occurred in broad daylight. (*Id.* at pp. 265, 269.) Considering the totality of circumstances, the Court of Appeal concluded that the one-quarter inch protrusion located in an area where foot traffic occurred was not a trivial defect as a matter of law. (*Id.* at pp. 268–271.) The court noted that "some *protrusions* become more dangerous the less visible they are." (*Id.* at p. 269.) "In the case at bar, the protrusion was large enough to cause an injury while being small enough to avoid easy detection. The condition was not one that resulted from wear or tear, nor was

6

it the result of a change in the weather; it was one that existed from the date of installation of the concrete tire-stop and remained constant." (*Id.* at p. 270.)  Thus, the court reversed a summary judgment ruling in favor of the defendant.  (*Id.* at p. 271.)

The facts of this case are similar in many respects.  This case also involves a metal protrusion from the concrete caused by human conduct, rather than an uneven walking surface caused by natural settling or wear and tear over time.  As in *Dolquist*, the protrusion was in an area where foot traffic occurred—directly in the path between the parking lot and the movie theater and only 10 feet from the box office.  The protrusion was large enough to cause an injury while being small enough to avoid detection.  The accident occurred in daylight, and there was no evidence of prior similar accidents.

There are also some dissimilarities.  Unlike *Dolquist*, the protrusion here was on the surface of an otherwise level walkway, not on the top of an elevated tire stop.  But it is unclear which is more dangerous.  Someone stepping over a tire stop would naturally look down to gauge its height, whereas someone walking on a level concrete walkway would not necessarily be looking down.  The protrusion in this case was also twice as high as the protrusion in *Dolquist*—one-half inch versus one-quarter inch.  And there was evidence that the protrusions here were especially difficult to detect because their grayish color blended in with the concrete surface.

Finally, the plaintiff in *Dolquist* presented expert testimony that the protrusion presented a tripping hazard, whereas neither party in this case presented expert testimony.  (*Dolquist*, *supra*, 196 Cal.App.3d at pp. 265, 268–269.)  But determining whether the trivial risk doctrine applies as a matter of law is ultimately "a question of law" for the court to decide.  (*Caloroso*, *supra*, 122 Cal.App.4th at p. 929.)  Thus, expert testimony on the

7

subject is not determinative. (See, e.g., *Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 705 [finding trivial risk as a matter of law despite expert testimony that it was a significant risk and dangerous condition]; see also *Caloroso*, at p. 928 ["regardless of whether a witness can be found to opine on the subject of a dangerous condition, the court must independently evaluate the circumstances"]; *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 732 [rejecting plaintiff's expert testimony in finding defect to be trivial as a matter of law and holding "there is no need for expert opinion" on the issue].)

Weighing all the relevant circumstances, we conclude that, as in *Dolquist*, reasonable minds could differ as to whether the defect presented a substantial risk of injury. On this record, the issue simply cannot be resolved as a question of law. Accordingly, the trial court erred by ruling that the defect was trivial as a matter of law. (*Huckey*, *supra*, 37 Cal.App.5th at p. 1105.)

We are not persuaded by the trial court's reasoning. First, as we have discussed, the one-half inch height of the protrusion alone does not establish a trivial defect as a matter of law. (*Dolquist*, *supra*, 196 Cal.App.3d at pp. 266–270.) Second, the trial court concluded that "Plaintiff does not know how long the protrusions had been on the ground, whether there had been any prior incidents, or whether Defendant even knew of the condition." But Romero presented evidence that the protrusions were caused by the removal of a light pole earlier in 2019—which may even have been part of the ongoing construction that was still occurring on the day of the incident in July 2019. If the condition had only been in existence for a short time, the fact that there was no evidence of prior tripping or falling incidents has little significance in determining whether the defect was trivial. Notably, AMC presented no evidence as to when the light pole was removed and the bolts left exposed—

even though it is reasonable to assume that AMC had access to this information. AMC also did not contest that it had notice of the defect in its moving papers. On the contrary, AMC affirmatively argued that it was "irrelevant" to the trivial defect issue whether it had notice of the condition. And there was some evidence that the AMC manager had prior knowledge of the condition and declined Magana's offer to show her the bolts, inferably because she already knew about them.

Finally, the trial court relied on the fact that "it was a sunny day [and] there was nothing obstructing Plaintiff's view of the sidewalk." But the trip-and-fall incident in *Dolquist* also occurred in broad daylight, yet the court still concluded that the one-quarter inch protrusion was not a trivial defect as a matter of law. (*Dolquist*, *supra*, 196 Cal.App.3d at p. 269; see also *Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 28–30 [holding that recessed drain with depths ranging from 1/32 inch to 5/16 inch did not constitute trivial defect as a matter of law, even though plaintiff fell on a sunny afternoon in a well-lit area and there was nothing obstructing her view of the drain].) The trial court's reasoning also fails to account for the facts that: (1) the protrusions were not visible to Romero because they were the same grayish color as the concrete surface; and (2) they were located in a place where AMC patrons walking directly from the parking lot to the movie theater would naturally be looking straight ahead towards the box office just 10 feet away, rather than down at the ground. We therefore conclude that the trial court erred by granting summary judgment and finding the defect to be trivial as a matter of law.

## DISPOSITION

The judgment is reversed.  Romero is entitled to recover her costs on appeal.


BUCHANAN, J.

WE CONCUR:


DATO, Acting P. J.


CASTILLO, J.