Filed 9/7/22  Burton v. City of La Verne CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| IRENE BURTON, | B312336 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV27788) |
| v. | |
| CITY OF LA VERNE et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Michael E. Whitaker, Judge.  Affirmed.

Belgum, Fry & Van Allen and Alan A. Carrico; the Arkin Law Firm and Sharon J. Arkin for Plaintiff and Appellant Irene Burton.

Collins + Collins, Michael L. Wroniak, and Jacob M. Ramirez; Pollak, Vida & Barer, Daniel P. Barer, and Hamed

Amiri Ghaemmaghami for Defendant and Respondent City of La Verne.

Mark R. Weiner & Associates, Michael Park, and Kathryn Albarian for Defendant and Respondent Constance Shoemaker.

---

## INTRODUCTION

While taking a walk in the City of La Verne (the City), appellant Irene Burton tripped on a raised sidewalk slab. She then sued respondents, the City and adjacent-property owner Constance Shoemaker. The trial court ultimately granted summary judgment for respondents, concluding as a matter of law that the height differential -- about 1-5/16 inches at its highest -- constituted a trivial defect that could not give rise to liability.

Burton challenges this ruling on appeal, arguing that both the size of the defect and other aggravating factors created a triable issue as to whether the defect was trivial. We conclude that the defect was trivial as a matter of law based on its nature and size, and that no aggravating factor rendered it dangerous. We therefore affirm.

## BACKGROUND

### A. Burton's Accident and the Complaint

On the morning of October 25, 2018, Burton and her husband were walking east near 1042 Mildred Street in the

2

City of La Verne, when she tripped over a raised sidewalk panel. In August 2019, Burton filed this action against the City and others, and subsequently added Shoemaker as a defendant.[1] She alleged that the raised slab constituted a dangerous condition of public property under Government Code sections 830 and 835, and that a tree on Shoemaker's property had created that sidewalk defect.

### B. *The Motion for Summary Judgment*

In 2020, following discovery, the City moved for summary judgment, arguing that the raised sidewalk slab constituted a trivial defect as a matter of law.[2] Shoemaker joined the City's motion. In support of summary judgment, the City presented a declaration by two city employees, Dustin Whitebear and Debra Fritz. Whitebear, a maintenance worker for the City, stated that he was dispatched to measure and grind down sidewalk deviations in the area of Burton's fall after the incident. According to him, the largest height differential near 1042 Mildred Street measured no more than one inch at its highest point. Fritz, a deputy city clerk, stated that she had searched the city's records for claims, complaints, or incident reports within the

---

[1]     The other defendants are not pertinent to this appeal.

[2]     As discussed further below, under the trivial defect doctrine, property owners are not liable for damages caused by minor, trivial, or insignificant defects. (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927 (*Caloroso*).)

3

preceding 10 years, but found no other reported incidents near the location of Burton's fall.

The City additionally provided excerpts of Burton's deposition testimony, as well as Burton's responses to requests for admissions. At her deposition, Burton testified that the day of the incident was clear and sunny. According to her, she was walking on the right side of the sidewalk, when her right foot caught on the raised slab, causing her to fall. When asked if she recalled where she was looking immediately before her fall, she replied she did not, but stated, "I am very conscious of where I am stepping, and so I was probably looking ahead and just missed that lift." Burton denied seeing any debris on the ground, but testified that the raised slab looked like it was "newer" than the adjacent one, and confirmed that one was darker than the other. In response to questioning regarding her familiarity with Mildred Street, she stated she did not think it was the first time she had walked there, but that she was not as familiar with the street as with others in the neighborhood. In her responses to requests for admissions, Burton admitted that the raised sidewalk slab had no jagged edges, and that "at the time of the INCIDENT, there was nothing in front of [her] obstructing [her] view of the raised sidewalk panel."

### C. Burton's Opposition

Opposing the motion for summary judgment, Burton contended that the defect was larger than the City claimed,

4

and argued it was not trivial because it posed a substantial risk of causing a pedestrian to trip and fall, and because it was not readily observable.  In support, Burton provided photos taken by police shortly after her fall, including the following photo, depicting the raised sidewalk slab and the adjacent slab:



Burton additionally presented an April 2019 internal City memo noting that in 2016, a city-wide sidewalk inspection identified two locations needing repairs at the site of Burton's fall. Those locations were added to the City's "grind list of sidewalk repairs," but were not actually repaired until late October 2018, after Burton's fall.

Finally, Burton provided the declaration of Mark Burns, a forensic engineering expert. Based on measurements he conducted after the City had ground down the raised slab, Burns opined that the height differential at the site of Burton's fall was about 1-5/16 inches at its highest. Citing human ambulation studies, Burns opined that "any abrupt height differential in excess of [one inch] . . . has the substantial possibility of causing a pedestrian to trip and fall or misstep if [it] is not conspicuous and readily observable in advance." According to Burns, "[f]rom a human factors standpoint, the subject height differential was high enough to cause a trip or misstep event, but low enough that it would not be readily apparent." Burns proceeded to identify three factors that in his opinion, rendered the height differential more difficult to detect. He asserted: (1) "there was no color or texture differentiation between the concrete slabs forming the height differential, which would tend to conceal [its] existence"; (2) based on the photo of the defect taken by police, a shadow covered the height differential at the time of Burton's fall; and (3) the raised slab was sloped so that "the differential at the curb was basically non-existent/flush with the curb," and "a

6

reasonable pedestrian viewing the sidewalk ahead could be misled by the fact that the sidewalk was level on the left side, lured into not seeing there was a differential on the right side."

### D. The Trial Court's Ruling

In February 2021, the trial court granted summary judgment for respondents, holding that the raised sidewalk slab constituted a trivial defect as a matter of law. Assessing the size of the defect, the court found that even under Burns's calculation -- placing the height differential at about 1-5/16 inches -- the defect was trivial. The court further found no aggravating factor that might have rendered the defect non-trivial.

### E. The Judgments and Burton's Notice of Appeal

The court entered separate judgments for Shoemaker and the City, on March 9 and March 12, 2021, respectively.[3] Burton filed a notice of appeal, stating that she was appealing "from the Judgment entered on March 12, 2021 in favor of Defendant[] City of La Verne and Defendant Constance Louise Shoemaker, after an order granting

---

[3] Although the trial court had already entered judgment for Shoemaker, its March 12 judgment for the City stated that judgment was then being entered for both the City and Shoemaker.

summary judgment."  The notice of appeal was served on both the City and Shoemaker.

## DISCUSSION

### A. *Burton's Notice of Appeal Indicated Her Intent to Challenge the Judgment for Shoemaker*

Shoemaker contends the judgment against her is unreviewable in this appeal because Burton's notice of appeal designated only the judgment against the City.  We disagree.  "'[I]t is, and has been, the law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.'"  (*In re Joshua S.* (2007) 41 Cal.4th 261, 272.)  Burton's notice of appeal was served on both the City and Shoemaker and stated that she appealed "from the Judgment entered on March 12, 2021 in favor of Defendant[] City of La Verne *and Defendant Constance Louise Shoemaker*, after an order granting summary judgment."  (Italics added.)  Although the court entered separate judgments for the City and Shoemaker, and the judgment for the latter was, in fact, entered on March 9, rather than March 12, the notice of appeal clearly reflected Burton's

8

intent to appeal the judgment for Shoemaker.[4]  Shoemaker
could not have been misled or prejudiced by the notice of
appeal's reference to a single judgment.  Accordingly, the
judgment in her favor is properly before us.[5]

### B. *The Trial Court Properly Granted Summary Judgment for Respondents*

#### 1. *Governing Principles*
##### a. *Summary Judgment*

"A party is entitled to summary judgment only if there
is no triable issue of material fact and the party is entitled to
judgment as a matter of law.  [Citation.]  A defendant
moving for summary judgment must show that one or more
elements of the plaintiff's cause of action cannot be
established or that there is a complete defense.  [Citation.]
If the defendant meets this burden, the burden shifts to the
plaintiff to present evidence creating a triable issue of
material fact.  [Citation.]  A triable issue of fact exists if the
evidence would allow a reasonable trier of fact to find the

---

[4]     Burton's erroneous treatment of the March 12 judgment as
the operative judgment for Shoemaker was understandable,
given that judgment's incorrect statement that it was being
entered for both the City and Shoemaker.

[5]     Shoemaker complains about other procedural omissions by
Burton following the filing of the notice of appeal, but presents no
argument in that respect.  She has therefore forfeited any
contention related to those omissions. (See *Sviridov v. City of San
Diego* (2017) 14 Cal.App.5th 514, 521 [failure to present reasoned
argument constitutes forfeiture].)

fact in favor of the party opposing summary judgment. [Citation.] [¶] We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent." (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636-637.)

### b. *Trivial Defect Doctrine*

"The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury. [Citations.]" (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.) However, "persons who maintain walkways, whether public or private, are not required to maintain them in absolutely perfect condition. The duty of care imposed on a property owner, even one with actual notice, does not require the repair of minor defects." (*Ursino v. Big Boy Rests.* (1987) 192 Cal.App.3d 394, 398.)

Thus, "[i]t is well established that a property owner is not liable for damages caused by a minor, trivial or insignificant defect in property. [Citation.] Courts have referred to this simple principle as the 'trivial defect defense,' although it is not an affirmative defense but rather an aspect of duty that [the] plaintiff must plead and prove." (*Caloroso*, *supra*, 122 Cal.App.4th at 927.)

The trivial defect defense also applies to claims under the Government Claims Act (Gov. Code, § 810 et seq.).

10

Under this statute, a governmental entity may be liable for injuries caused by a dangerous condition on its property. (Gov. Code §§ 830, 835.) "'A condition is "dangerous" if it creates a "substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used." ([Gov. Code,] § 830, subd. (a).) Conversely, a condition is "not dangerous," if "the trial court or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property . . . was used with due care . . ." in a reasonably foreseeable manner. ([Gov. Code,] § 830.2.)'" (*Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1104, 1103 (*Huckey*).)

"In appropriate cases, the trial court may determine, and the appellate court may determine de novo, whether a given walkway defect was trivial as a matter of law. [Citations.] 'Where reasonable minds can reach only one conclusion—that there was no substantial risk of injury—the issue is a question of law, properly resolved by way of summary judgment.' [Citation.] If, however, the court determines that sufficient evidence has been presented so that reasonable minds may differ as to whether the defect presents a substantial risk of injury, the court may not

11

conclude that the defect is trivial as a matter of law." (*Huckey*, *supra*, 37 Cal.App.5th at 1104-1105.) The court must independently evaluate the circumstances in determining whether the defect was trivial, regardless of any expert opinion stating that it posed a serious a significant risk. (See *Caloroso*, *supra*, 122 Cal.App.4th at 928, citing *Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 705 (*Davis*) ["regardless of whether a witness can be found to opine on the subject of a dangerous condition, the court must independently evaluate the circumstances"].)

"In determining whether a given walkway defect is trivial as a matter of law, the court should not rely solely upon the size of the defect[,] . . . although the defect's size 'may be one of the most relevant factors' to the court's decision. [Citation.] The court should consider other circumstances which might have rendered the defect a dangerous condition at the time of the accident. [Citation.] [¶] These other circumstances or factors include whether there were any broken pieces or jagged edges in the area of the defect, whether any dirt, debris or other material obscured a pedestrian's view of the defect, the plaintiff's knowledge of the area, whether the accident occurred at night or in an unlighted area, the weather at the time of the accident, and whether the defect has caused any other accidents. [Citations.] In sum, '[a] court should decide whether a defect may be dangerous only after considering all of the circumstances surrounding the accident that might make the defect more dangerous than its size alone would

12

suggest.'" (*Huckey*, *supra*, 37 Cal.App.5th at 1105, italics omitted.)

"The court's analysis of whether a walkway defect is trivial involves as a matter of law two essential steps. 'First, the court reviews evidence regarding type and size of the defect. If that preliminary analysis reveals a trivial defect, the court considers evidence of additional factors [bearing on whether the defect presented a substantial risk of injury]. If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law . . . .'" (*Huckey*, *supra*, 37 Cal.App.5th at 1105.)

### 2. *Analysis*

Burton contends the trial court erred by concluding that the height differential between the sidewalk slabs was a trivial defect as a matter of law. As discussed below, we disagree and conclude the trial court correctly determined that respondents were entitled to summary judgment under the trivial defect doctrine.

According on Burton's evidence, the sidewalk elevation at the site of her fall was about 1-5/16 inches at its highest. "Sidewalk elevations ranging from three-quarters of an inch to one and one-half inches have generally been held trivial as a matter of law." (*Huckey*, *supra*, 37 Cal.App.5th at 1107, citing *Caloroso*, *supra*, 122 Cal.App.4th at 927, *Barrett v. City of Claremont* (1953) 41 Cal.2d 70, 74, and *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 724, fn. 4.) Thus, our

13

preliminary assessment of the type and size of the defect reveals a trivial defect.[6] (See *Huckey,* at 1105, 1107.) We

---

[6] Burton cites several cases for the proposition that the size of the defect here alone precluded a conclusion that it was trivial as a matter of law. None of those cases supports her contention. (See *Barone v. City of San Jose* (1978) 79 Cal.App.3d 284, 291-292 [one-inch displacement was not trivial as matter of law where defect was "an irregular and jagged break" (*id.* at 291) and it was unclear if prior accidents had occurred in area]; *Johnson v. City of Palo Alto* (1962) 199 Cal.App.2d 148, 150 [height differential of up to 5/8 inch was not trivial as matter of law because of aggravating factors, including poor visibility at site of accident]; *Rodriguez v. City of Los Angeles* (1963) 215 Cal.App.2d 463, 467-468 [differential of up to one inch was not trivial as matter of law where there had been at least four prior accidents at relevant location]; *Kasparian v. Avalonbay Communities, Inc.* (2007) 156 Cal.App.4th 11, 28-29 [drain grate recession up to 5/16 inch deep was not trivial as matter of law where drain was indistinguishable from surrounding pavers in color and texture and could not be easily detected even in daylight, and all other drains in area were flush with ground, creating expectation that all drains in walkways would be flush with ground]; *Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 569 ["three[] irregularly shaped and sizeable holes of about an inch deep flanking one another in the street" were not trivial as matter of law, as their proximity to each other "may have both increased the risk of injury to a reasonably careful pedestrian, and decreased the possibility of his or her recovery (where, as here, one attempting to regain one's balance after tripping in one hole is caught)"].)

Burton additionally points to Burns's opinion, citing human ambulation studies, that "any abrupt height differential in excess of [one inch] has the substantial possibility of causing a pedestrian to trip and fall or misstep if [it] . . . is not conspicuous

*(Fn. is continued on the next page.)*

therefore consider the evidence regarding any additional factors bearing on whether the defect presented a substantial risk of injury. (See *ibid.*)

The record establishes that the sidewalk defect was readily visible, and the surrounding circumstances do not suggest that the minor sidewalk elevation presented a substantial risk of injury. The incident occurred on a clear and sunny day. The raised slab on which Burton tripped had no jagged edges, and the area was clear of dirt or debris. By Burton's own admission, "there was nothing in front of [her] obstructing [her] view of the raised sidewalk panel." The photo of the raised slab, taken shortly after the incident, shows that the height differential was conspicuous and confirms that nothing obscured it.

Burton argues several factors rendered the sidewalk defect more dangerous and created a triable issue as to whether it was trivial. We conclude that none of the claimed factors supports her claim. First, Burton notes Burns's statement in his declaration that "[f]rom a human factors standpoint, the subject height differential was high enough to cause a trip or misstep event, but low enough that it would not be readily apparent." Burns's suggestion that a height differential of the size involved here is categorically dangerous even absent any aggravating factors is contrary to

---

and readily observable in advance." As discussed below, we conclude that under the circumstances at the time of appellant's fall, the height differential was both conspicuous and readily observable in advance.

15

the caselaw (see, e.g., *Huckey*, *supra*, 37 Cal.App.5th at 1107; *Caloroso*, *supra*, 122 Cal.App.4th at 927), and we are not compelled to accept it (see *Davis*, *supra*, 42 Cal.App.4th at 704-705 [concluding that stair design that purportedly "'invite[d]'" people to descend at oblique angle was trivial defect as matter of law despite expert opinion that it was dangerous; "the fact that a witness can be found to opine that such a condition constitutes a significant risk and a dangerous condition does not eliminate this court's statutory task . . . of independently evaluating the circumstances"]; cf. *Caloroso*, *supra*, 122 Cal.App.4th at 928 [no abuse of discretion in excluding expert opinion because photos of defect demonstrated it was minor and thus "no expert was needed to decide whether the size or irregular shape of the crack rendered it dangerous"].)

Second, Burton quotes Burns's statement -- for which he provided no express foundation -- that "there was no color or texture differentiation between the concrete slabs forming the height differential, which would tend to conceal the existence of the subject height differential." Initially, we note that similarity of color and texture is the typical condition of adjacent sidewalk slabs, and we question whether standard conditions could be deemed aggravating factors that render an otherwise trivial defect dangerous. Regardless, Burton's own testimony refutes Burns's unsupported assertion: she testified at her deposition that the raised slab looked like it was "newer" than the adjacent

16

one, and confirmed in response to questioning that one was darker than the other.

Third, pointing to the photo, Burton argues that at the time of her fall, a shadow from a nearby hedge covered the sidewalk where she fell. Even if this is true, no evidence suggests the shadow obscured the height differential's visibility. On the contrary, the relevant photo shows the defect was readily visible despite any shadow.

Fourth, Burton repeats Burns's statement that "the differential at the curb was basically non-existent/flush with the curb," and that "a reasonable pedestrian viewing the sidewalk ahead could be misled by the fact that the sidewalk was level on the left side, lured into not seeing there was a differential on the right side." However, nowhere in his declaration did Burns explain why a reasonably prudent pedestrian walking on the right side of the sidewalk, as Burton was, would look to the opposite side to determine if the path ahead of him or her was clear of obstacles.

Fifth, Burton contends she was unfamiliar with Mildred Street, the site of her fall. At her deposition, Burton testified she did not think that was the first time she had walked on Mildred Street, but that she was not as familiar with it as with other streets in her neighborhood. She cites no case deeming a plaintiff's lack of intimate familiarity with the site of their accident, on its own, sufficient to transform an otherwise trivial defect into a dangerous one, and we are aware of none. And given that the defect here was readily

17

visible, Burton's relative lack of familiarity with the street would not have prevented her from noticing it.

Finally, Burton notes the City's 2016 addition of the sidewalk where she fell to its "grind list," and argues a jury could conclude that the City would not expend funds to repair a defect it considered trivial. We disagree. The defect here undoubtedly posed *some* risk and in fact caused Burton to trip. But a city's commendable aspiration to eliminate even small risks and make its streets safer does not support a finding that the risk was nontrivial for purposes of imposing liability on the city. (See *Huckey*, *supra*, 37 Cal.App.5th at 1110 & fn. 5 [city's maintenance superintendent's instruction that employees bevel height differentials higher than one-half inch indicated that such defects posed some trip hazard, "[b]ut to constitute a dangerous condition, the height differential, and the area surrounding it, must have posed 'a substantial (as distinguished from a minor, trivial or insignificant) risk of injury' when 'used with due care in a manner in which it is reasonably foreseeable that it will be used'"]; *Nunez v. City of Redondo Beach* (2022) 81 Cal.App.5th 749, 758-759, [city's policy that height differentials above half-inch should be repaired did not establish that defect was dangerous condition; "although the City may have thought offsets of the size here posed a tripping hazard, the evidence does not support finding the defect posed a *substantial* risk of injury" (*id.* at 759, italics added)].) Accordingly, Burton has failed to establish any triable issue of fact as to whether the sidewalk

18

defect was trivial, and the trial court correctly granted summary judgment in respondents' favor.

## DISPOSITION

The judgments are affirmed.  Respondents are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.

19