Filed 11/9/23  Ruggiero v. 2003 Bouquet Canyon CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LAUREN RUGGIERO, | B324445 |
| Plaintiff and Appellant. | (Los Angeles County Super. Ct. No. 21STCV02274) |
| v. | |
| 2003 BOUQUET CANYON LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Audra Mori, Judge.  Reversed.

Law Offices of Samer Habbas & Associates and Adam Kocaj for Plaintiff and Appellant.

Finch Tetzlaff and David W. Tetzlaff for Defendant and Respondent.

_____

# INTRODUCTION

Lauren Ruggiero tripped and fell on a sidewalk displaced by the roots of a tree on property owned by 2003 Bouquet Canyon LLC. The trial court granted a motion by Bouquet Canyon for summary judgment, ruling a one-inch height differential between two raised sidewalk slabs was a trivial defect that, as a matter of law, did not create a dangerous condition. Ruggiero argues the trial court failed to consider evidence of other factors that, together with the one-inch height differential, could lead a reasonable factfinder to conclude the sidewalk defect created a dangerous condition. Because Ruggiero submitted admissible evidence creating a triable issue of material fact, we reverse.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Ruggiero Trips and Falls on a Sidewalk and Files This Action*

Bouquet Canyon owns an apartment building on property that includes a tree with roots growing under an adjacent sidewalk. The tree roots lifted two concrete sidewalk panels into a peak, with one panel higher than the other. The City of Los Angeles repaired the sidewalk twice, once in 2016 and again in 2018. As a result of these repairs, a black asphalt patch on one side of the peaked sidewalk created a slope that reduced the height differential between the two sidewalk panels from over seven inches to approximately one inch.

One "beautiful" sunny morning in June 2020, Ruggiero decided to take a jog. It was her first time jogging. While

traversing the sidewalk adjacent to Bouquet Canyon's property, Ruggiero ran across the asphalt patch and tripped on the one-inch height differential between the two sidewalk panels. She fell and broke her leg.

Ruggiero filed this negligence action against Bouquet Canyon and the City. Among other things, Ruggiero alleged Bouquet Canyon and the City created a dangerous condition by allowing tree roots on Bouquet Canyon's property to lift the sidewalk panels. Ruggiero alleged the sidewalk where she fell was "uneven, dangerous and highly raised off the ground and was fragmented with various differentials in height due to overgrown tree roots underneath it."

B.     *Bouquet Canyon Files a Motion for Summary Judgment*

Bouquet Canyon moved for summary judgment, arguing it did not owe a duty to Ruggiero because the defect in the sidewalk was open and obvious and created only a minor, trivial, or insignificant risk of injury.[1] Bouquet Canyon relied on Ruggiero's deposition testimony and photographs taken by Ruggiero's expert that Ruggiero produced in discovery. In her deposition Ruggiero stated that she could differentiate between the black asphalt patch and the gray concrete sidewalk, but that she could not see the one-inch height differential between the two sidewalk panels because the asphalt patch "camouflaged" it. Bouquet Canyon, however, argued the photographs of the sidewalk showed there were no "broken pieces, or jagged edges or other conditions of the sidewalk that were dangerous or hazardous, only that the black

_____

[1]     The City did not move for summary judgment and is not a party to this appeal.

3

asphalt patch had a height differential of one inch with the gray concrete." Bouquet Canyon also argued the photographs showed "there was nothing to hide or obstruct the condition of the sidewalk." Bouquet Canyon urged the trial court to "simply review the photographs" and conclude the one-inch differential between the sidewalk panels was not a dangerous condition as a matter of law.

In opposing the motion for summary judgment, Ruggiero argued the alleged dangerous condition included the one-inch differential between the sidewalk panels, as well as "a large elevated slope" created by the asphalt patch. Regarding the height differential, Ruggiero's expert, Mark Burns, stated his opinion that such an "abrupt height differential" has "the substantial possibility of causing a pedestrian . . . to trip and fall or misstep if the height [differential] is not conspicuous and readily observable in advance." Regarding the slope created by the asphalt patch, Burns stated the sidewalk where Ruggiero tripped "had concrete panels that were lifted and converged at a peak which constituted 7-5/16 inches above the adjacent grass, producing running slopes as large as 39.5 percent, cross slopes as large as 7.4 percent, and an abrupt height differential of . . . approximately 1 inch between the two lifted concrete panels." Ruggiero argued Bouquet Canyon addressed only the height differential and "completely ignore[d] the slope of the sidewalk which is what created the tripping hazard."

Citing photographs showing the sidewalk shaded by the tree whose roots were lifting the concrete panels, Ruggiero also argued the one-inch height differential was "not conspicuous and readily observable." Relying on the photographs and "astronomical data," Burns stated that, at the time of the

4

accident, "there most likely would have been shadows cast on and/or around the subject defect from the adjacent tree, further obscuring the hazard." According to Burns, the combination of the slope, the shadows, and Ruggiero's speed as she traversed the sidewalk "would have made the subject condition difficult to perceive at the time of the incident."[2]

In its reply, Bouquet Canyon argued neither Ruggiero nor her experts contended she could not see the black asphalt patch, despite the presence of a high slope. Bouquet Canyon argued "any danger associated with the black asphalt patch was obvious or should have been in the exercise of reasonable care." Bouquet Canyon further argued that any argument "there were most likely shadows cast on/or around the black asphalt patch is pure speculation" and that there was "no testimony presented that would support the improper conclusion that shadows prevented [Ruggiero] from observing the condition, where she testified to the opposite."

C.   *The Trial Court Grants Bouquet Canyon's Motion for Summary Judgment, and Ruggiero Appeals*

The trial court ruled the sidewalk where Ruggiero tripped did not create a dangerous condition. The court first found, based on photographs produced by Ruggiero that showed a ruler beside

---

[2]   Ruggiero also argued Bouquet Canyon had actual notice of the sidewalk's condition because the apartment building's property manager complained to the City on several occasions about the sidewalk's condition and asked the City to repair it. The trial court did not address this argument because it found the defect trivial as a matter of law. Because we reverse the judgment on that ground, we do not address this argument either.

5

the displaced sidewalk, the height differential between the sidewalk panels was "approximately one inch." Citing *Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559 (*Stathoulis*) and similar cases, the court ruled that the size of the defect alone did not render it trivial as a matter of law and that the court also had to consider "'the nature and quality of the defect'" and "'the time of day and lighting conditions when the accident occurred.'"

Referring to Ruggiero's evidence of the slopes created by the asphalt patch, the trial court stated it "reviewed the photos of the sidewalk and does not find that the slopes rendered the sidewalk dangerous." The court also stated Ruggiero's expert witnesses failed to explain "how the slopes alone are what caused [Ruggiero] to trip and fall, or how they could have caused a trip and fall absent the height differential."

The trial court rejected Ruggiero's evidence that shadows likely obscured Ruggiero's ability to see the one-inch height differential because Ruggiero did not submit evidence, such as a declaration, "that her vision of the defect was obstructed by shadows or that there were in fact shadows present at the time of the incident." Instead, the court observed that Ruggiero said in her deposition no trash, leaves, or other object covered the defect in the sidewalk at the time of the accident. "The evidence thus shows," the trial court concluded, "the height differential and slopes were in plain sight and did not pose a substantial risk of injury to a pedestrian using due care." The court ruled Ruggiero failed "to raise a triable issue of material fact as to the triviality of the defect."

The trial court granted Bouquet Canyon's motion for summary judgment on August 23, 2022. The court did not enter judgment, however, until May 2023. In the meantime, Ruggiero

6

filed on November 2, 2022 a notice of appeal from the trial court's order granting the motion for summary judgment (incorrectly stating she was appealing from a judgment after an order granting a summary judgment motion).[3]

## DISCUSSION

### A.    *Summary Judgment Law*

"A court may grant a motion for summary judgment only when all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 225, internal quotation marks omitted (*Fajardo*); see Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  "'A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense.'" (*Long Beach Memorial Medical Center v. Allstate Ins. Co.* (2023) 95 Cal.App.5th 710, 716; see Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic*

---

[3]    Although an order granting a motion for summary judgment is not appealable, and thus Ruggiero's notice of appeal was premature, we deem her notice of appeal as timely filed from the subsequent judgment.  (See *Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 223; *North American Title Co., Inc. v. Gugasyan* (2021) 73 Cal.App.5th 380, 388, fn. 4; *Valdez v. Seidner-Miller, Inc.* (2019) 33 Cal.App.5th 600, 607; *Lat v. Farmers New World Life Ins. Co.* (2018) 29 Cal.App.5th 191, 193.)

*Richfield Co.* (2001) 25 Cal.4th 826, 850.) "'Where, as here, the defendant moves for summary judgment on the grounds that one or more elements of the plaintiff's [cause of action] cannot be established, the defendant must present evidence that either "conclusively negate[s] an element of the plaintiff's cause of action" or "show[s] that the plaintiff does not possess, and cannot reasonably obtain," evidence needed to establish an element.'" (*Long Beach Memorial Medical Center*, at p. 716; see *Aguilar*, at pp. 853-855.)

"'"Only after the defendant carries that initial burden does the burden shift to the plaintiff 'to show that a triable issue of one or more material facts exists as to the cause of action.'"'" (*Long Beach Memorial Medical Center v. Allstate Ins. Co.*, *supra*, 95 Cal.App.5th at p. 716; see Code Civ. Proc., § 437c, subd. (p)(2); *Fajardo*, *supra*, 85 Cal.App.5th at pp. 225-226.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850; see *Long Beach Memorial Medical Center*, at p. 716.)

We review de novo an order granting a motion for summary judgment and decide whether the facts not subject to dispute warrant judgment for the moving party as a matter of law. (*Fajardo, supra*, 85 Cal.App.5th at p. 226; see *Long Beach Memorial Medical Center v. Allstate Ins. Co.*, *supra*, 95 Cal.App.5th at p. 716.) "We 'liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.'" (*Fajardo*,

at p. 226; see *Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1103 (*Huckey*).)

B.  *Trivial Defect Law*

"Property owners are required "'to maintain land in their possession and control in a reasonably safe condition" . . . and to use due care to eliminate dangerous conditions on their property.' [Citation.]  But "'a property owner is not liable for damages caused by a minor, trivial, or insignificant defect" on its property.'" (*Fajardo*, *supra*, 85 Cal.App.5th at p. 226; see *Nunez v. City of Redondo Beach* (2022) 81 Cal.App.5th 749, 757; *Taylor v. Trimble* (2017) 13 Cal.App.5th 934, 943-944.)  "The so-called 'trivial defect doctrine' recognizes that "'persons who maintain walkways, whether public or private, are not required to maintain them in an absolutely perfect condition.  The duty of care imposed on a property owner, even one with actual notice, does not require the repair of minor defects.'"'" (*Fajardo*, at p. 226; see *Nunez*, at p. 757; *Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 26-27.)

"In limited circumstances a court may determine a walkway defect is trivial as a matter of law." (*Fajardo*, *supra*, 85 Cal.App.5th at p. 226; see *Huckey, supra*, 37 Cal.App.5th at p. 1104; *Stathoulis, supra*, 164 Cal.App.4th at p. 567.)  ""'Where reasonable minds can reach only one conclusion—that there was no substantial risk of injury—the issue is a question of law, properly resolved by way of summary judgment.'"'" (*Fajardo*, at p. 226; see *Stack v. City of Lemoore* (2023) 91 Cal.App.5th 102, 110 (*Stack*).)  "But where "'sufficient evidence has been presented so that reasonable minds may differ as to whether the defect is

dangerous,'" summary judgment is inappropriate." (*Fajardo*, at p. 226; see *Stack*, at p. 110.)

Whether a particular sidewalk defect creates a dangerous condition depends on the facts and circumstances of the case. (*Stack*, *supra*, 91 Cal.App.5th at p. 110.)  The size of the defect is one of the most relevant factors.  (See *Fajardo*, *supra*, 85 Cal.App.5th at p. 227; *Huckey, supra*, 37 Cal.App.5th at p. 1105; *Stathoulis*, *supra*, 164 Cal.App.4th at p. 568.)  In general, "'when the size of the [defect] begins to stretch *beyond one inch* the courts have been reluctant to find that the defect is not dangerous as a matter of law,' i.e., that it is minor or trivial." (*Stack*, at p. 112 & fn. 8.)  But "whether the defect is dangerous as a matter of law does not rest solely on the size of the crack in the walkway, [because] a tape measure alone cannot be used to determine whether the defect was trivial." (*Fajardo*, at p. 227, internal quotations omitted; see *Nunez v. City of Redondo Beach, supra*, 81 Cal.App.5th at p. 757; *Huckey,* at p. 1105; *Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927.)  A court also must consider "'all of the circumstances surrounding the accident that might make the defect more dangerous than its size alone would suggest.'" (*Fajardo*, at p. 227; see *Caloroso*, at p. 927.)  Among the other factors and circumstances indicating a sidewalk defect is dangerous to a reasonably careful person are "the nature and quality of the defect (including whether it has jagged breaks or cracks)" and "the lighting and weather conditions at the time of the incident." (*Stack*, at p. 115; see *Nunez,* at pp. 757-758; *Huckey,* at p. 1105; *Stathoulis*, at p. 567; *Caloroso,* at p. 927.)[4]

---

[4]     Ruggiero cites the following statement in a footnote to the court's opinion in *Stack*:  "When two slabs of a sidewalk are nonaligned horizontally, by a *significant* depression, such a defect

C.    *The Trial Court Erred in Granting Bouquet Canyon's Motion for Summary Judgment*

Ruggiero argues the trial court erred by weighing the evidence and ruling the defect was trivial as a matter of law.  She contends reasonable minds could differ about whether the defect was dangerous.  Because the evidence Ruggiero submitted created a triable issue of material fact, the trial court erred in granting the motion for summary judgment.

1.    *The Nature and Quality of the Defect*

The trial court fundamentally mischaracterized the nature of the defect in this case.  Citing a statement in Ruggiero's opposition to the motion for summary judgment, the court described Ruggiero's position as that "the slopes of the sidewalk 'is what created the tripping hazard.'"  The court then stated Ruggiero's expert witnesses failed to explain how the slopes "could have caused a trip and fall absent the height differential."  The court's descriptions of both Ruggiero's position and the expert's testimony were inaccurate.  Ruggiero argued and submitted evidence showing that the totality of the circumstances, including (i.e., not only) the slope of the sidewalk and the height differential between the concrete slabs, created a dangerous condition.

may *not* be found to be trivial as a matter of law *unless* there are no aggravating circumstances attending the defect." (*Stack*, *supra*, 91 Cal.App.5th at p. 114, fn. 9.)  In *Stack*, however, the defect was one and three-quarter inches, "nearly double the one-inch threshold where courts grow reluctant to take the issue [of triviality] from the jury." (*Id.* at p. 114.)  Because the height differential here was approximately one inch, the footnote statement in *Stack* does not apply.

11

As stated, Ruggiero alleged the sidewalk where she tripped was "uneven, dangerous and highly raised off the ground" with "various differentials in height." In her deposition, Ruggiero testified she tripped on "a piece of the sidewalk that was sticking up," where "the black asphalt gravel meets the . . . light side of the sidewalk." She acknowledged she could distinguish between the black asphalt and the gray concrete, but she said the asphalt "camouflaged" the one-inch height differential. Ruggiero did not explain further, and counsel for Bouquet Canyon did not ask her to elaborate. In her opposition to the motion for summary judgment, however, Ruggiero argued "the two pieces of concrete come together and form a hidden and abrupt one-inch height differential, as well as a large elevated slope, creating a dangerous condition at the subject area. This dangerous condition caused [Ruggiero] to trip and fall."

Ruggiero's expert stated the defect in the sidewalk included both the black asphalt slope and the one-inch height differential. As discussed, Burns stated: "[T]he concrete panels within the incident area are both lifted and converge at a peak. The peak formed between the subject concrete panels is lifted 7-5/16 inches above the adjacent grass, producing running slopes as large as 39.5 percent, cross slopes as large as 7.4 percent, and an abrupt height differential of approximately 1 inch between the two lifted concrete panels." Burns gave his opinion that "an abrupt height differential of this magnitude has the substantial possibility of causing a pedestrian to trip and fall or misstep if the height differential is not conspicuous and readily observable in advance." Burns further stated the height differential Ruggiero tripped on was not conspicuous and readily observable because it

12

was "high enough to cause a trip or misstep event, but low enough that it would not be readily apparent."

Bouquet Canyon did not submit any evidence to contradict the testimony of Ruggiero or Burns. The trial court, in concluding without explanation the asphalt slopes did not render the sidewalk dangerous, referred only to photographs submitted with Burns's declaration. The photographs relied on by the trial court, however, did not support its ruling the defect was trivial as a matter of law.[5] One photograph shows the slope created by the black asphalt patch that Ruggiero ran across and the uplift in the sidewalk panel where she tripped.[6] The photograph shows that the front edge of the patch is extremely uneven and that a large crack runs horizontally across the patch just below the one-inch differential with the adjoining sidewalk panel. Other

---

[5] We independently review photographs relied on by the trial court in finding a defect trivial as a matter of law. (See *Kasparian v. AvalonBay Communities, Inc.*, *supra*, 156 Cal.App.4th at p. 24 ["It is incumbent on the reviewing court to examine the photographs for itself and make its own determinations."]; see, e.g., *Stack, supra*, 91 Cal.App.5th at p. 117 [concluding based on photographs that a "fact finder could reasonably view the roughness of the lip [of a sidewalk panel] as increasing the risk of catching a pedestrian's toe"]; *Barone v. City of San Jose* (1978) 79 Cal.App.3d 284, 291 [concluding based in part on photographs depicting a one-inch sidewalk elevation with an "irregular and jagged break" that summary judgment was not appropriate].)

[6] In support of its motion for summary judgment, Bouquet Canyon submitted 92 numbered photographs, which Ruggiero had produced in discovery, of the sidewalk and its surroundings. The trial court did not identify which specific photographs it relied on in concluding the defect was trivial as a matter of law.

photographs show the difference in the slope from one side of the patch to the other, demonstrating the patch was not smooth or uniform. In addition, Ruggiero testified that the patch was not "smooth" and that parts of the patched sidewalk "were still a little higher" than others. Although Ruggiero testified she tripped on the one-inch uplift and not the asphalt patch, courts have found sidewalks with cracks or jagged edges can "'make [a] defect more dangerous than its size alone would suggest.'" (*Fajardo*, *supra*, 85 Cal.App.5th at p. 227; see *Stack*, *supra*, 91 Cal.App.5th at p. 115; *Caloroso v. Hathaway*, *supra*, 122 Cal.App.4th at p. 927.) The nature and quality of the defect here do not support a finding it was trivial as a matter of law. (See *Stack*, at p. 115 [the "scope of the condition" of the subject sidewalk included two defects the plaintiff encountered at the same time, even though he tripped on only one of them].)

### 2. *The Lighting and Shadows on the Defect*

Ruggiero argued and submitted evidence showing that at the time of the accident the tree whose roots uplifted the sidewalk also cast shadows on the sidewalk. Burns stated "astronomical data . . . indicates that there most likely would have been shadows cast on and/or around the subject defect from the adjacent tree, further obscuring the hazard." Ruggiero did not say that shadows affected her ability to perceive the uplifted sidewalk, but she did say that the black asphalt patch "camouflaged" the uplift and that a photograph showing the sidewalk in shadows "accurately depict[ed] how the sidewalk looked on the day of the accident." The photograph Ruggiero identified shows how the combination of the shadows and the black asphalt "camouflaged" the uplift as she approached it.

14

Burns opined that the combination of the magnitude of the height differential (high enough that it could cause a person to trip but low enough that it was not readily apparent), the shadows cast on the sidewalk, and Ruggiero's speed as she ran across the sidewalk "would have made the subject condition difficult to perceive at the time of the incident."[7]

The trial court ruled Ruggiero's evidence did not create a triable issue of material fact because Ruggiero did not say in her declaration that "her vision of the defect was obstructed by shadows or that there were in fact shadows present at the time of the incident." But Ruggiero presented uncontradicted evidence that shadows were likely present at the time of the accident, and a reasonable trier of fact could easily infer from the photographs that shadows made it more difficult for her to see the defect. (See *Huckey, supra,* 37 Cal.App.5th at p. 1103 [in reviewing an order granting a motion for summary judgment, an appellate court considers reasonable inferences from the evidence]; *Caloroso v. Hathaway, supra,* 122 Cal.App.4th at p. 929 [court reasonably inferred from the evidence that "dappled light blinded [the plaintiff's] view of the crack" in the sidewalk where she tripped].)

The trial court also stated that photographs showed "the height differential was in plain sight, the black asphalt was color contrasted from the adjacent concrete slab, and the shadows in the photos did not obstruct the defect." A review of the photographs shows otherwise. One photograph shows the defect as Ruggiero approached it. The shadows cast by the large tree,

---

[7] Bouquet Canyon objected to the paragraph of Burns's declaration that included this phrase, but the trial court sustained the objection only to Burns's statement "the subject sidewalk defect constituted a dangerous condition."

15

combined with the black asphalt patch, make it difficult to discern the one-inch uplift, even though it is a different color than the asphalt patch. Indeed, when counsel presented Ruggiero with a photograph that shows the gray uplift and the black asphalt patch, Ruggiero said, "You can't really tell [that] unless you're, like, staring, like we are, at [the photograph]." She stated: "You would never be able to see that just looking at it from above." A reasonable trier of fact could conclude shadows made it more difficult for Ruggiero to see the one-inch height differential in the sidewalk. (See *Johnson v. City of Palo Alto* (1962) 199 Cal.App.2d 148, 150, 152 [reasonable factfinder could find a sidewalk defect was dangerous where "trees partially shaded the [lighted] sidewalk, causing it to be shadowy"].) In light of all the evidence submitted in connection with the motion for summary judgment, reasonable minds could differ about whether the defect—including the sloping asphalt patch, the one-inch height differential, and lighting conditions that could have made the defect difficult to perceive—"'presented a substantial risk of injury.'" (*Fajardo*, *supra*, 85 Cal.App.5th at p. 230; see *Stathoulis*, *supra*, 164 Cal.App.4th at p. 570.)

## DISPOSITION

The judgment is reversed.  Ruggiero is to recover her costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.          MARTINEZ, J.